IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

MICHAEL KAISER-NYMAN, individually and on behalf of a Classes of all persons and entities similarly situated,

        Plaintiff

vs.

GOVERNMENT PROCUREMENT AND MARKETING, INC.,

        Defendant.

Case No.

COMPLAINT – CLASS ACTION

## CLASS ACTION COMPLAINT

### Preliminary Statement

1. Plaintiff Michael Kaiser-Nyman ("Plaintiff"), brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, as well as for playing prerecorded messages during autodialed calls to Plaintiff and others and impeding caller identification, in violation of the Illinois Automatic Telephone Dialers Act ("ATDA"), 815 ILCS 305/1 *et seq.*.

2. "Month after month, unwanted robocalls and texts, both telemarketing and informational, top the list of consumer complaints received by" the Federal Communications Commission.[1] If robocalls were a disease, they would be an epidemic." Rage Against Robocalls, Consumer Reports (July 28, 2015). "Robocalls" are the #1 consumer complaint in America today and the defendant's conduct in this case is a good reason why.

---

[1] *Omnibus TCPA Order*, GC Docket 02-278, FCC 15-72, 2015 WL 4387780, ¶1 (July 10, 2015).

3. Congress enacted the TCPA to prevent real harm. Congress found that "automated or pre-recorded calls are a nuisance and an invasion of privacy, regardless of the type of call" and decided that "banning" such calls made without consent was "the only effective means of protecting telephone consumers from this nuisance and privacy invasion." Pub. L. No. 102-243, §§ 2(10-13) (Dec. 20, 1991), codified at 47 U.S.C. § 227; see also Mims v. Arrow Fin. Servs., LLC, 132 S. Ct. 740, 744 (2012) ("The Act bans certain practices invasive of privacy").

4. "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.' 137 Cong. Rec. 30, 821 (1991).

5. Mr. Kaiser-Nyman alleges that Defendant Government Procurement and Marketing, Inc. ("GP&M") made automated and pre-recorded telemarketing calls using equipment prohibited by the TCPA and ATDA, even though they had no business relationship with him or permission to contact him.

6. Because the call to the Plaintiff was transmitted using technology capable of generating thousands of similar calls per day, Plaintiff brings this action on behalf of a proposed nationwide Classes of other persons who were sent the same illegal telemarketing call.

7. A Classes action is the best means of obtaining redress for the Defendant's illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and ATDA, and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

**Parties**

8. Plaintiff Michael Kaiser-Nyman is an Illinois resident, and a resident of this District.

9. Defendant Government Procurement and Marketing, Inc. is a Florida corporation with its principal place of business at 11350 66th Street, Suite 110 in Largo, FL 33773. GP&M has a registered agent of Alan R. Lovell, 1548 S. Missouri Ave., Suite 109 in Clearwater, FL 33756. GP&M engages in telemarketing nationwide, including into this District.

## Jurisdiction & Venue

10. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the Plaintiff's claims arise under federal law.

11. This Court also has subject matter jurisdiction pursuant to the Classes Action Fairness Act of 2005 ("hereinafter referred to as CAFA") codified as 28 U.S.C. 1332(d)(2). The matter in controversy exceeds $5,000,000.00, in the aggregate, exclusive of interest and costs, as each member of the proposed Classes of at least tens of thousands is entitled to up to $1,500.00 in statutory damages for each call that has violated the TCPA. Further, Plaintiff alleges a national Classes, which will likely result in at least one Classes member from a different state.

12. GP&M regularly engages in business in this District, including making telemarketing calls into this District, as it did with the Plaintiff.

13. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District, as the automated calls to the Plaintiff were made to this District. Furthermore, venue is proper because a substantial part of property that is the subject of the action is situated in this District; the Plaintiff's cellular telephone.

## **TCPA Background**

### **The Telephone Consumer Protection Act**

14. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

15. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." *See* 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

16. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

17. The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

4

18. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

### Illinois Automatic Telephone Dialers Act

19. In Illinois, the Automatic Telephone Dialers Act ("ATDA") also prohibits, inter alia, "play[ing] a prerecorded message placed by an autodialer without the consent of the called party". 815 ILCS 305/15(d). The ATDA provides for treble actual damages, statutory damages of $500 per violation, and costs and reasonable attorneys' fees. 815 ILCS 305/30. Passage of the 2013 amendments to the ATDA providing for statutory damages, as invoked here, was unanimous in the Illinois legislature.

### Factual Allegations

20. GP&M provides services to business purporting to assist them in securing contracts with the federal government.

21. GP&M uses telemarketing to promote its products.

22. GP&M's telemarketing efforts include the use of automated dialing equipment to send automated calls.

5

23. GP&M's automated calling equipment delivered pre-recorded messages to the cellular telephones of call recipients.

24. On June 14 and June 18, 2018, the Plaintiff received a pre-recorded telemarketing call on his cellular telephone number, (916) 595-XXXX. Both pre-recorded messages briefly start in the middle of the message, as if the answering machine detection started early, but then caught the mistake and restarted the message after the beep.

25. A transcript of the virtually identical prerecorded messages follows:

> ……Hi, this is Katherine Cassidy with GP&M. I see your company is registered to do business with the government. I was calling to see if you have any interest in available, relevant contract opportunities for your specific industry. If so, please give me a call back at (813) 444-4788.

26. Plaintiff's cellular telephone number, (916) 595-XXXX was registered on the National Do Not Call Registry on November 7, 2008.

27. Both calls to the Plaintiff came from the Caller ID number (813) 444-4969

28. Both calls delivered a pre-recorded voice message to the Plaintiff's cellular telephone.

29. The calls were also made using an Automatic Telephone Dialing System ("ATDS") as that term is defined in 47 U.S.C. § 227(a)(1) and 815 ILCS 305/5(a).

30. First, the use of a pre-recorded voice is evidence of an ATDS. It would be illogical to record voice message and then manually dial each call and play the recorded message instead of using a live voice.

31. Second, the message was automatically delivered because it restarted in the middle of the delivery once the Plaintiff's voicemail message ended.

32. Furthermore, the Plaintiff, who formerly operated a dialer recognized the ATDS being used as one with answering machine detection capabilities.

33. These facts, as well as the geographic distance between the Plaintiff and the Defendant, as well as the fact that this call was part of a nationwide telemarketing campaign demonstrate that the call was made using an ATDS.

34. Prior to these unsolicited calls, the Plaintiff has never done any business with GP&M and Plaintiff never provided GP&M with his cellular telephone number.

35. GP&M did not have the Plaintiff's prior express written consent to make this call.

36. In fact, the Plaintiff wrote to GP&M requesting evidence of any prior express written consent they had prior to filing this lawsuit.

37. GP&M responded it purposely obtained Plaintiff's number from a third party but it did not have liability under the TCPA because its calls were business to bussiness.

38. Unfortunately, the Plaintiff's experience with the Defendant is not unique, as other individuals have complained about GP&M's telemarketing practices:

> **Sweorfan**
> 7 Nov 2017
> Robo call from GP&M (Government Procurement & Marketing). Caller ID said Novato, Florida. Blocked number.
> *Caller: GP&M*
> *Call type: Scam suspicion*
>
> > **GateKeeper** replies to Sweorfan
> > 14 Nov 2017
> > Same here.
> > ID showed Tampa, FL
>
> **Kellie**
> 27 Nov 2017
> Robo call stuck on repeat
> *Caller: GP&M*

*See* https://800notes.com/Phone.aspx/1-813-444-4648 (Last Visited June 20, 2018).

7

39. Plaintiff and the other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because the phone line was tied up, they were charged for the calls and their privacy was improperly invaded.

40. Moreover, these calls injured plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of plaintiff and the Classes.

**Classes Action Allegations**

41. As authorized by Rule 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of all other persons or entities similarly situated throughout the United States.

42. The Classes of persons Plaintiff proposes to represent include:

TCPA CLASS

All persons within the United States to whom: (a) Defendant and/or a third party acting on their behalf, made one or more non-emergency telephone calls; (b) to their cellular telephone number; (c) using the same system or systems used to call Plaintiff or an artificial or prerecorded voice; and (d) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

IL ATDA SUBCLASSES

All persons in the State of Illinois to whom: (a) GP&M or someone on GP&M's behalf, made one or more non-emergency telephone calls; (b) to their cellular telephone number; (c) that played a prerecorded message (d) placed by the same system or systems used to call Plaintiff (e) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

These are collectively referred to as the "Classes".

43. Excluded from the Classes are the Defendant, any entities in which the Defendant has a controlling interest, the Defendant's agents and employees, any Judge to whom this action is assigned, and any member of the Judge's staff and immediate family.

8

44. The proposed Classes members are identifiable through phone records and phone number databases.

45. The automated technology used to contact the Plaintiff is capable of contacting hundreds of thousands of people a day, and so the potential Classes members number in the thousands, at least. Individual joinder of these persons is impracticable.

46. Plaintiff is a member of the Classes.

47. There are questions of law and fact common to Plaintiff and to the proposed Classes, including but not limited to the following:

    a. Whether the GP&M used an automatic telephone dialing system or pre-recorded message to make the calls at issue;

    b. Whether the GP&M used any device or system programmed to sequentially or randomly access stored telephone numbers to automatically connect a telephone with a recorded message

    c. Whether the GP&M placed telemarketing calls without obtaining the recipients' valid prior express written consent;

    d. Whether the GP&M's violations of the TCPA were negligent, willful, or knowing; and

    e. Whether the Plaintiff and the Classes members are entitled to statutory damages because of GP&M's actions.

48. Plaintiff's claims are based on the same facts and legal theories as the claims of all Classes members, and therefore are typical of the claims of Classes members, as the Plaintiff and Classes members all received telephone calls through the same or similar dialing system on a cellular telephone line.

49. Plaintiff is an adequate representative of the Classes because his interests do not conflict with the interests of the Classes, he will fairly and adequately protect the interests of the Classes, and he is represented by counsel skilled and experienced in Classes actions, including TCPA Classes actions. In fact, the Plaintiff has foregone a simpler path to recovery by filing this matter as a putative Classes action, as opposed to an individual claim.

50. The actions of the GP&M are generally applicable to the Classes and to Plaintiff.

51. Common questions of law and fact predominate over questions affecting only individual Classes members, and a Classes action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of Classes members, which will be ascertainable from records maintained by GP&M and/or its agents.

52. The likelihood that individual Classes members will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case, and given the small recoveries available through individual actions.

53. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for Classes membership described above.

### Legal Claims

### Count One:
### Violation of the TCPA, 47 U.S.C. § 227(b)

54. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

55. The foregoing acts and omissions of GP&M and/or its affiliates, agents, and/or other persons or entities acting on GP&M' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to the cellular telephone numbers of Plaintiff and members of the Classes using an ATDS.

10

56. As a result of GP&M's and/or its affiliates, agents, and/or other persons or entities acting on GP&M's behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Classes presumptively are entitled to an award of $500 in damages for each and every call made to their cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

57. Plaintiff and members of the Classes are also entitled to and do seek injunctive relief prohibiting GP&M and/or its affiliates, agents, and/or other persons or entities acting on GP&M's behalf from violating the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to any cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in the future.

58. The Defendant's violations were negligent, willful, or knowing.

## COUNT Two
## Violations of the ATDA, 815 ILCS 305/1 *et seq.*

59. Plaintiff reallege and incorporate the foregoing allegations as if set forth fully herein.

60. The ATDA prohibits "play[ing] a prerecorded message placed by an autodialer without the consent of the called party." 815 ILCS 305/30(b).

61. Under the ATDA, an "autodialer" or "autodialer system" is defined as "any telephone dialing or accessing device, machine, computer or system capable of storing telephone numbers which is programmed to sequentially or randomly access the stored telephone numbers in order to automatically connect a telephone with a recorded message[.]" 815 ILCS 305/5(a). A

"recorded message" refers to "any taped communication soliciting the sale of goods or services without live voice interaction." 815 ILCS 305/5(c). [2]

62. GP&M did not have the consent of Plaintiff or the other members of the ATD Classes to play a prerecorded message placed by an autodialer.

63. Nonetheless, GP&M called the phones of Plaintiff and the other members of the ATD Classes using a telephone dialing or accessing device, machine, computer or system capable of storing telephone numbers which is programmed to sequentially or randomly access the stored telephone numbers in order to automatically connect a telephone with a recorded message. No human being physically dialed each digit of Plaintiff's or the other ATD Sub-Classes members' phone numbers to connect their telephones with a recorded message.

64. Consequently, GP&M violated the ATDA by playing a prerecorded message placed by an autodialer during calls to the phones of Plaintiff and the other ATD Sub-Classes members, without such persons' consent.

65. As a result of GP&M's conduct and pursuant to Section 30(c)-(c-5) of the ATDA, Plaintiff and the other members of the ATD Classes were harmed and are each entitled to statutory damages of $500 per violation and three times any actual damages, as well as costs and attorneys' fees. 815 ILCS 305/30(c)-(c-5).

## Relief Sought

For himself and all Classes members, Plaintiff requests the following relief:

A. Certification of the proposed Classes;

B. Appointment of Plaintiff as representative of the Classes;

---

[2] The term "autodialer" or "autodialer system" does not include "device[s] associated with a burglar alarm system, voice message system or fire alarm system." 815 ILCS 305/5(a).

C. Appointment of the undersigned counsel as counsel for the Classes;

D. A declaration that GP&M and/or its affiliates, agents, and/or other related entities' actions complained of herein violate the TCPA and the Illinois ATDA;

E. An order enjoining GP&M and/or its affiliates, agents, and/or other related entities, as provided by law, from using pre-recorded messages;

F. An award to Plaintiff and the Classes of damages, as allowed by law;

G. Leave to amend this Complaint to conform to the evidence presented at trial; and

H. Orders granting such other and further relief as the Court deems necessary, just, and proper.

        Plaintiff,
        By Counsel,

Dated: June 26, 2018     By: */s/Keith J. Keogh*

        KEOGH LAW, LTD.
        Keith J. Keogh,
        Timothy J. Sostrin
        55 W. Monroe St. Ste. 3390
        Chicago, IL 60603
        (312) 726-1092 / (312) 726-1093
        keith@keoghlaw.com
        tsostrin@keoghlaw.com

        Edward Broderick
        Anthony Paronich
        Email: ted@broderick-law.com
                anthony@broderick-law.com
        BRODERICK & PARONICH, P.C.
        99 High St., Suite 304
        Boston, Massachusetts 02110
        Telephone: (508) 221-1510
        *Subject to Pro Hac Vice*

        Matthew P. McCue
        Law Office of Matthew McCue
        1 South Ave, Third Floor

        Natick, MA 01760
        (508) 655-1415
        Email: mmccue@massattorneys.net
        *Subject to Pro Hac Vice*

## **JURY DEMAND**

Plaintiff demands a trial by jury.

        */s/ Keith J. Keogh*
        *KEOGH LAW, LTD.*
        *Keith J. Keogh,*
        *Timothy J. Sostrin*
        *55 W. Monroe St. Ste. 3390*
        *Chicago, IL 60603*
        *(312) 726-1092 / (312) 726-1093*
        *keith@keoghlaw.com*
        *tsostrin@keoghlaw.com*